UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                         :

ORELMA MATTHEW,                        :

                           :

                 Plaintiff,         :

                           :          21 Civ. 5337 (JPC)

       -v-                      :

                           :        OPINION AND ORDER

TEXAS COMPTROLLER OF PUBLIC ACCOUNTS,  :
KEITH WOMACK, Individually and in His Official  :
Capacity, LAURA BEIMER, Individually and in Her  :
Official Capacity, JUDITH PINCHINAT, Individually  :
and in Her Official Capacity,             :

                           :

               Defendants.       :

                           :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Orelma Matthew alleges that her former employer, the Texas Comptroller of Public Accounts ("TCPA"), as well as her former supervisors there, discriminated against her based on her race, fostered a hostile work environment because of her race, and then retaliated against her for protesting these actions. She brings claims under federal, New York state, and New York City law against TCPA and against the other Defendants in both their official and their individual capacities. Defendants have moved to dismiss all claims, with the exception of Matthew's Title VII retaliation claim against TCPA.

      Defendants' motion is granted in part and denied in part. With respect to Matthew's claims against TCPA, Matthew has adequately alleged that the agency discriminated against her and subjected her to a hostile work environment in violation of Title VII. The remaining claims against TCPA are dismissed on sovereign immunity grounds. Keith Womack, Laura Beimer, and Judith Pinchinat (the "Individual Defendants") also are entitled to sovereign immunity to the extent they

are sued in their official capacities.  In addition, Matthew's failure to allege that any of the Individual Defendants subjected her to an adverse employment action requires dismissal of her race discrimination claims against them under 42 U.S.C. §§ 1981 and 1983 and the New York State Human Rights Law ("NYSHRL").  Matthew has, however, sufficiently pleaded that the Individual Defendants treated her less well due in part to her race, so her New York City Human Rights Law ("NYCHRL") claims against them for discrimination and a hostile work environment survive dismissal.  But Matthew's allegations against Womack and Beimer are insufficient to meet the higher showing required of a hostile work environment claim under the NYSHRL.  The Court does not dismiss Matthew's state hostile work environment claim against Pinchinat because Defendants' motion fails to apply the appropriate legal standard for that claim.  Additionally, Matthew's failure to allege that either Beimer or Pinchinat had any knowledge of her protected activity when they subjected her to disciplinary action requires dismissal of her retaliation claims against those Defendants under the NYSHRL and NYCHRL.  And her NYSHRL retaliation claim against Womack fails because Womack's alleged conduct did not constitute a materially adverse employment action.  But because Womack's conduct, as alleged, was reasonably likely to deter employees from engaging in protected activity, Matthew's NYCHRL retaliation claim against him survives.

Each of these dismissals is without prejudice to Matthew filing an Amended Complaint in the event she is able to cure the pleading defects discussed below.

# I. Background

## A. Facts[1]

TCPA is an executive branch position created by the Texas Constitution to collect tax revenue with an office in New York, New York.  Compl. ¶ 4.  On January 15, 2015, Matthew, a black woman, began working for TCPA as an executive assistant.  *Id.* ¶¶ 2, 22.  Matthew received merit bonuses for her performance in 2016 and 2017.  *Id.* ¶¶ 26-27.  On April 25, 2017, during an administrative staff training, Matthew and other black employees "raised questions and concerns about proper and equal pay and treatment" to Womack, Matthew's supervisor and the Assistant Director at TCPA in Manhattan.  *Id.* ¶¶ 7-8, 32.  Womack "responded in a belittling tone stating that [the complaining employees would] not get any increase in pay because allegedly Auditors generate revenue and have a higher turnover rate, while Admins do not generate revenue and have lower turnover rates."  *Id.* ¶ 32.  Additionally, "many White Admins received merit bonuses and were given salary increases, while Black Admins hardly received the same benefits and perks at the same rate of frequency."  *Id.* ¶ 33.  At another March 2018 administrative staff training, Womack responded to black administrative employees who complained about workplace conditions and unequal pay "in a belittling tone, stating 'If you don't like what's going on, you can leave and find another job.'"  *Id.* ¶ 34.

Matthew's work performance was "outstanding" until Beimer became the Regional Manager for TCPA and Pinchinat became the Manager of TCPA's New York office on April 1, 2019.  *Id.*  ¶ 29.  Thereafter, "Black employees, such as Plaintiff, were spoken down to, spoken to

---

[1] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Complaint.  Dkt. 1 ("Compl."); *see also Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiffs' favor").

in a belittling and insulting tone and manner, while their White and non-Black counterparts were not." *Id.* ¶ 30.  Black employees that asked questions about pay and working conditions during administrative staff trainings were "responded to in a rude, demeaning and dismissive manner, while White and non-Black employees' concerns and questions [were] properly attended to." *Id.* ¶ 31.  Every black employee at Matthew's office "received some form of disciplinary action or reprimand" from Beimer and Pinchinat, while white employees were not treated similarly. *Id.* ¶ 36.  Generally, black employees faced "harassment, discrimination and less favorable treatment" reflected in the "amount that Black employees were getting paid, in the manner they [were] addressed and spoken to, and even in the manner that Human Resources ('H.R.') respond[ed] to their complaints and concerns." *Id.* ¶ 37.  Matthew offers an example.  In July 2019, she reached out to the manager of H.R. "to get help with her grievance response" and the manager was "hostile over the phone" and "not receptive" to Matthew's complaints. *Id.* ¶ 38.  Instead, the manager accused Matthew of lying in an email about contacting H.R. *Id.*

Towards the end of August 2019, Pinchinat gave Matthew a poor performance evaluation for the period of April 1, 2019 to August 31, 2019. *Id.* ¶ 39.  Pinchinat put Matthew on a three-month probation "based on unfounded allegations" and despite the fact that Matthew "had previously met and exceeded all her prior appraisals" since she started working at the TCPA in January 2015. *Id.*

Matthew submitted a complaint to H.R. on June 23, 2020 regarding race discrimination and on June 25, 2020 again complained that "Defendants 'retracted' the complaint of another Black employee in an attempt to silence her" while "reiterat[ing] her own complaints of 'systemic racism.'" *Id.* ¶ 42.  Matthew complained again on June 29, 2020 about racism and unfair treatment

4

and called for an outside company to investigate racism at TCPA.  *Id.* ¶¶ 43-46.  After Defendants did not respond, Matthew sent another complaint on July 10, 2020.  *Id.* ¶¶ 47-48.

Defendants terminated Matthew on July 14, 2020.  *Id*. ¶ 49.

## B.   Procedural History

Matthew filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on August 18, 2020.  *Id.* ¶ 21.  She received a right-to-sue notice on March 24, 2021.  *Id.*  Matthew then filed this lawsuit on June 16, 2021, within ninety days of receiving her EEOC determination.  *Id.*

Matthew brings twelve claims against Defendants.  These are: (1) race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), against TCPA, Compl. ¶¶ 53-56; (2) race discrimination in violation of 42 U.S.C. § 1981 against all Defendants, *id.* ¶¶ 57-60; (3) race discrimination in violation of 42 U.S.C. § 1983 against all Defendants, *id.* ¶¶ 61-64; (4) race discrimination in violation of the NYSHRL, N.Y. Exec. Law § 290 *et seq.*, against all Defendants, Compl. ¶¶ 65-68; (5) race discrimination in violation of the NYCHRL, N.Y.C. Admin. Code § 8-101 *et seq.*, against all Defendants, Compl. ¶¶ 69-73; (6) retaliation in violation of Title VII against TCPA, *id.* ¶¶ 74-77; (7) retaliation in violation of the NYSHRL against all Defendants, *id.* ¶¶ 78-81; (8) retaliation in violation of the NYCHRL against all Defendants, *id.* ¶¶ 82-86; (9) promotion of a hostile work environment in violation of Title VII against TCPA, *id.* ¶¶ 87-90; (10) promotion of a hostile work environment in violation of the NYSHRL against all Defendants, *id.* ¶¶ 91-94; (11) promotion of a hostile work environment in violation of the NYCHRL against all Defendants, *id.* ¶¶ 95-99; and (12) negligent supervision against TCPA, *id.* ¶¶ 100-105.

On October 22, 2021, Defendants moved for partial dismissal for lack of subject matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Dkt. 10.  Defendants do not challenge the Sixth Cause of Action, Matthew's Title VII retaliation claim against TCPA, at this time, but seek dismissal of all other claims on jurisdictional and deficient pleadings grounds.  Dkt. 11 ("Defts. Mem.") at 4-5.

## II.  Standard of Review

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 545.  Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).  Additionally, "[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

## III.  Discussion

### A.  Eleventh Amendment Sovereign Immunity

Defendants argue that TCPA and the Individual Defendants in their official capacity are entitled to Eleventh Amendment immunity except with respect to Matthew's Title VII claims

against TCPA.[2]   Defts. Mem. at 8.   Plaintiff does not appear to contest this argument.   Dkt. 14 ("Pl. Opp.") at 5-6.   "[S]tate governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity."   *Caruso v. Zugibe*, 646 F. App'x 101, 104 (2d Cir. 2016) (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)). This immunity "extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state."   *Id.*   State officials acting in their official capacity are likewise entitled to this immunity, including against state law claims brought in federal court under pendant jurisdiction.   *See Vega v. Semple*, 963 F.3d 259, 284 (2d Cir. 2020) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984)).   Finally, "issues of [Eleventh Amendment] immunity implicate a court's subject-matter jurisdiction and, as such, are usually threshold issues that must be decided before proceeding to the merits of a given case."   *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 415-16 (2d Cir. 2022) (citations omitted).

Because Matthew does not show that Texas has waived its Eleventh Amendment immunity to the federal, state, and city law claims at issue in this case, other than the Title VII claims against TCPA, the Court dismisses Plaintiff's Second, Third, Fourth, Fifth, Seventh, Eighth, Tenth, Eleventh, and Twelfth Causes of Actions against TCPA and against the Individual Defendants in their official capacities without prejudice.

## B.   Discrimination Claims

Matthew brings claims of race discrimination under Title VII against TCPA (First Cause of Action), under sections 1981 and 1983 against all Defendants (Second and Third Causes of

---

[2] Defendants acknowledge that Congress has abrogated the states' sovereign immunity for claims under Title VII, so the Eleventh Amendment does not bar Matthew's claims under that statute.   Defts. Mem. at 8; *see also Baez v. New York*, 56 F. Supp. 3d 456, 464 (S.D.N.Y. 2014) *aff'd*, 629 F. App'x 116 (2d Cir. 2015).

Action), under the NYSHRL against all Defendants (Fourth Cause of Action), and under the NYCHRL against all Defendants (Fifth Cause of Action).  Defendants primarily argue that Matthew's race discrimination claims fail because she has not sufficiently pleaded discriminatory intent on the part of Defendants.  Defts. Mem. at 10-12.

### 1.      Title VII

Matthew's First Cause of Action alleges race discrimination against TCPA in violation of Title VII.  Compl. ¶¶ 53-56.  To sufficiently plead discrimination under Title VII, a plaintiff must "alleg[e] facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).  The plaintiff must show that "(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Harris v. NYC Hum. Res. Admin.*, No. 20 Civ. 2011 (JPC), 2021 WL 3855239, at *6 (S.D.N.Y. Aug. 27, 2021) (internal quotation marks omitted).

An adverse employment action is one that causes "a materially adverse change in the terms and conditions of employment." *Vega*, 801 F.3d at 85 (internal quotation marks omitted).  It must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id*. Examples include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.*  "Subjecting an employee to unequal pay can, of course, constitute a materially adverse employment action." *Humphries v. City Univ. of N.Y.*, No. 13 Civ 3641 (PAE), 2013 WL 6196561, at *6 (S.D.N.Y. Nov. 26, 2013) (quoting *Butler v. N.Y. Health & Racquet Club*, 768 F. Supp. 2d 516, 532 (S.D.N.Y. 2011)).

To infer discriminatory intent at the motion to dismiss stage, "the question is not whether a plaintiff is likely to prevail, but whether the well-pleaded factual allegations plausibly give rise to an inference of unlawful discrimination, *i.e.*, whether plaintiffs allege enough to 'nudge[] their claims across the line from conceivable to plausible.'" *Vega*, 801 F.3d at 85 (alteration in original) (quoting *Twombly*, 550 U.S. at 570). The plaintiff must have "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). The motivation component requires only that an adverse employment decision be motivated "at least in part by an 'impermissible reason' *i.e.*, a discriminatory reason." *Vega*, 801 F.3d at 87 (quoting *Stratton v. Dep't for the Aging for City of N.Y.*, 132 F.3d 869, 878 (2d Cir. 1997)). One method of showing discriminatory intent is to show disparate treatment between plaintiff and a similarly situated employee outside of the protected group. *See Mandell v. Cnty. of Suffolk,* 316 F.3d 368, 379 (2d Cir. 2003) ("A showing of disparate treatment—that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group'— is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case." (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000))).

Matthew argues that Defendants took three types of adverse employment actions against her. These are (1) not compensating her equally, (2) improperly subjecting her to disciplinary actions and giving her a poor performance evaluation, and (3) terminating her. Pl. Opp. at 17.

To begin, Matthew does not actually allege that she personally was paid less than any particular white administrator or white administrators generally. Instead, Matthew alleges that white administrators received merit bonuses and were given salary increases at a higher rate of frequency than black administrators, without stating whether she personally was passed over for

these raises.  Compl. ¶ 33.  Without pleading an adverse employment action against her in the form of unequal pay, Matthew has not pleaded that any adverse employment action in such regards was undertaken in circumstances giving rise to discriminatory intent.

While Matthew alleges that she personally was subject to "some form of disciplinary action or reprimand" at the hands of Beimer and Pinchinat (since she claims that all black employees at the office received such treatment), *id.* ¶ 36, and that she was placed on a three-month probation and given a poor performance evaluation, *id.* ¶ 39, she does not articulate what these actions or reprimands were or how they or her probation affected the conditions of her employment.  *See Weeks v. N.Y. State (Div. of Parole)*, 273 F.3d 76, 86 (2d Cir. 2001) (holding that the plaintiff's alleged receipt of a "notice of discipline" was insufficient to constitute an adverse employment action when the plaintiff "does not describe its effect or ramifications, how or why the effect would be serious, whether it went into any file, or even whether it was in writing"), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Hall v. N.Y.C. Dep't of Transp.*, 701 F. Supp. 2d 318, 335-36 (E.D.N.Y. 2010) ("[E]ven assuming that plaintiff was subjected to criticism and reprimands, where, as here, such conduct did not lead to materially adverse employment consequences, it is not considered actionable disparate treatment.").  As with the previous instance, these allegations are insufficient to plead an adverse employment action and so cannot plead an adverse action giving rise to an inference of discriminatory intent.

Matthew has adequately alleged an adverse employment action in her termination, however.  Compl. ¶ 49.  And while Matthew does not point to any similarly situated individual that was not terminated for similar conduct, such a showing is not the only way to plead discriminatory intent.  At this stage, Matthew must only provide "minimal support for the proposition that the employer was motivated by discriminatory intent."  *Littlejohn*, 795 F.3d at

311. She may do so by pointing to "bits and pieces of information to support an inference of discrimination, *i.e.* a mosaic of intentional discrimination." *Vega*, 801 F.3d at 86-87 (internal quotation marks omitted).

Matthew has done just that. She alleges that black employees including herself were "spoken down to, spoken to in a belittling and insulting tone and manner" while non-black employees were not. Compl. ¶ 30. She alleges that black employees, and only black employees, were "responded to in a rude demeaning and dismissive manner" when they asked questions about salary and working conditions. *Id.* ¶ 31. She alleges that black administrative employees received salary increases and merit bonuses at a lower rate than white administrative employees. *Id.* ¶ 33. She alleges that black employees were subject to reprimand and disciplinary actions at a higher rate than non-black employees. *Id.* ¶ 36. And she alleges that her termination took place following her complaints about these conditions of race discrimination. *Id.* ¶¶ 40-49. Taken together, these allegations are sufficient to provide "minimal support" for the proposition that Matthew's termination was motivated at least in part by discriminatory intent. Therefore, Defendants' motion to dismiss Matthew's Title VII discrimination claim against TCPA is denied.[3]

### 2.    Sections 1981 and 1983

Matthew's Second and Third Causes of Action allege discrimination on the basis of race in violation of 42 U.S.C. §§ 1981 and 1983. Compl. ¶¶ 57-64.

---

[3] A Title VII claim in New York is untimely unless a charge has been filed with the EEOC or appropriate state or local agency within 300 days. *See Rodriguez v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 3561 (MKV), 2022 WL 4484576, at *5 (S.D.N.Y. Sept. 26, 2022); *see also* 42 U.S.C. § 2000e-5(e)(1). While certain conduct discussed above occurred outside of the 300-day time window preceding Matthew's EEOC complaint, non-actionable conduct can still be assessed in determining whether Matthew's Complaint raises an inference of discriminatory animus as to her termination. *See Davis-Garett v. Urban Outfitters, Inc.,* 921 F.3d 30, 42 (2d Cir. 2019) ("[E]xpiration of the limitations period does not bar an employee from using the prior acts as background evidence in support of a timely claim." (internal quotation marks omitted)).

Section 1983 states that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

42 U.S.C. § 1983. "Section 1983, through its application of the Equal Protection Clause of the Fourteenth Amendment, protects public employees from various forms of discrimination, including hostile work environment and disparate treatment on the basis of race." *Littlejohn*, 795 F.3d at 320 (internal quotation marks and alterations omitted). The "basic elements" of a discrimination claim under section 1983 are "similar" to those under Title VII. *See Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019); *Vega*, 801 F.3d at 88. However, for employment discrimination under section 1983, a plaintiff must "establish that the defendant's discriminatory intent was a 'but-for' cause of an adverse employment action of the hostile [work] environment." *Naumovski*, 934 F.3d at 214.

"Unlike claims brought under Section 1983, a Section 1981 violation 'is not based on an underlying violation of a constitutional right, but rather provides an alternative statutory remedy for violations that concern an activity enumerated in the statute.'" *Anderson v. City of New York*, 817 F. Supp. 2d 77, 95 (E.D.N.Y. 2011). Section 1981 provides, in relevant part, that "[a]ll persons . . . shall have the same right in every State and Territory to . . . the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment." 42 U.S.C. § 1981(a). Thus, to establish a claim under section 1981, a plaintiff must show (1) that the plaintiff is a member of a racial minority, (2) the defendant's "intent to discriminate on the basis of race," and (3) "discrimination concerning one of the statute's enumerated activities." *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000). The enumerated activities include the rights "to make and enforce contracts, to sue, be

parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property."  42 U.S.C. § 1981(a).  Section 1981 applies to "discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment."  *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 224 (2d Cir. 2004).  A claim for employment discrimination under section 1981 is analyzed under the same framework as section 1983 and Title VII.  *See Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (analyzing section 1981 claim under same adverse employment action framework as Title VII claim).  As with a claim of employment discrimination under section 1983, "discriminatory intent is a necessary element of a § 1981 claim."  *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 368 (S.D.N.Y. 2006); *Patterson*, 375 F.3d at 226 ("[A] plaintiff pursuing a claimed violation of § 1981 or denial of equal protection under § 1983 must show that the discrimination was intentional.").  Additionally, for an individual to be liable under section 1981 or section 1983, the person must be "personally involved in the alleged deprivation" of rights.  *Littlejohn*, 795 F.3d at 314 (quoting *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)).

### i.   Womack

Matthew alleges that during an April 25, 2017 administrators training, Womack responded "in a belittling tone" to questions about equal pay and treatment, said that there would not be pay increases because "Auditors generate revenue and have a higher turnover rate, while Admins do not generate revenue and have lower turnover rates" despite the fact that white administrators and black administrators did not receive "benefits and perks at the same rate of frequency."  Compl. ¶¶ 32-33.  Matthew further alleges that, during a March 2018 training, Womack similarly responded in a belittling tone in response to complaints about workplace conditions and pay, and

told the black admins that "[i]f you don't like what's going on, you can leave and find another job." *Id*. ¶¶ 31-34.

The Court agrees with Defendants that Matthew has failed to state a claim under sections 1981 and 1983 against Womack because, *inter alia*, she has not sufficiently pleaded circumstances giving rise to an inference that discriminatory intent on Womack's part motivated any adverse employment action.[4] Indeed, Matthew's allegations as to Womack do not amount to an adverse employment action. Matthew does not allege that Womack's comments and tone led to a materially adverse change in the conditions of her employment. Without sufficiently alleging an adverse employment action, Matthew therefore has not pleaded that she suffered an adverse employment action conducted in circumstances giving rise to an inference of discriminatory intent. Therefore, Matthew's sections 1981 and 1983 claims against Womack are dismissed.

### ii.    Beimer and Pinchinat

Matthew alleges that all black employees at TCPA's New York office were reprimanded or received some form of disciplinary action from Beimer after she became Regional Manager, and from Pinchinat after she became Manager, while white employees were "not treated in a similar adverse manner." *Id.* ¶ 36. Additionally, Matthew alleges that Pinchinat gave her a poor performance evaluation on August 31, 2019 and placed her on a three-month probation "based on unfounded allegations." *Id.* ¶ 39. As discussed above, *see supra* III.B.1, these allegations are insufficient to plead a claim of discrimination under Title VII because Matthew has not shown

---

[4] Defendants argue that Plaintiff has failed to allege discriminatory intent because she has failed to allege the existence of any similarly situated individuals. Defs. Mem. at 10-12. Because the salient question regarding intent is whether "the adverse action occurred under circumstances giving rise to an inference of discrimination," *Harris*, 2021 WL 3855239, at *6 (internal quotation marks omitted), the Court assesses the issue of intent by first determining whether an adverse employment action occurred, as whether the action constituted an "adverse employment action" is part of the circumstances under which that action arises.

how they affected the conditions of her employment.  Accordingly, they are also insufficient to support a finding of any adverse action that was motivated by discriminatory intent, for purposes of liability under section 1981 or section 1983.  Matthew's claims against Beimer and Pinchinat under sections 1981 and 1983 are therefore dismissed as well.

### 3.    New York State Human Rights Law

Matthew's Fourth Cause of Action alleges race discrimination in violation of NYSHRL section 296(1)(a).  Compl. ¶¶ 65-68.[5]  NYSHRL section 296(1)(a) makes it "an unlawful discriminatory practice . . . [f]or an employer . . . because of an individual's . . . race . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment."  NYSHRL § 296(1)(a).  Claims brought under the NYSHRL are analyzed under the "same structure" as Title VII claims.  *Khwaja v. Jobs to Move Am.*, No. 19 Civ. 7070 (JPC), 2021 WL 3911290, at *3 (S.D.N.Y. Sept. 1, 2021) (citing *Winston v. Verizon Servs. Corp.*, 633 F. Supp. 2d 42, 47 (S.D.N.Y. 2009)).

As discussed above, *see supra* III.B.2.i-ii, none of Matthew's allegations against the Individual Defendants sufficiently plead an adverse employment action and therefore those allegations cannot support finding a discriminatory intent that motivated an adverse action.  As discussed in greater depth *infra* at III.C.2.iii, Matthew's claim against Pinchinat for her negative performance evaluation and placement on probation is subject to a less stringent analysis under

---

[5] The Court notes that a corporate employee, even if she holds the title of manager or supervisor, is not subject to suit for discrimination under the NYSHRL.  *See Patrowich v. Chem. Bank*, 473 N.E.2d 11, 12 (N.Y. 1984); *accord Doe v. Bloomberg*, 167 N.E.3d 454, 459 (N.Y. 2021) ("[A] corporate employee simply does not qualify as an 'employer,' regardless of the employee's position or relationship to the employer" under the NYSHRL.); *id.* ("Accordingly, we held in *Patrowich* that the State HRL does not render employees liable as individual employers."). However, Defendants failed to raise this argument and so the Court considers it waived.  *Cf. Volvo. N.A. Corp. v. Men's Int'l Pro. Tennis Council*, 857 F.2d 55, 65 (2d Cir. 1988) ("[T]he court erred by dismissing the complaint on grounds that were not briefed by either party.").

the amended NYSHRL.  However, Matthew alleges that the performance evaluation and probation were based on "unfounded allegations" without tying those allegations to her race or another protected characteristic.  Compl. ¶ 39.  As such, the Court cannot draw any inference of discriminatory intent with respect to these acts.

For this reason, Defendants' motion to dismiss the Fourth Cause of Action is granted.

### 4.     New York City Human Rights Law

Matthew's Fifth Cause of Action alleges discrimination on the basis of race against all Defendants in violation of the NYCHRL.  Compl.  ¶¶ 69-73.  The NYCHRL makes it "an unlawful discriminatory practice . . . for an employer or an employee or agent thereof, because of the actual or perceived . . . race . . . national origin . . . or immigration or citizenship status of any person . . . to discriminate against such person in compensation or in terms, conditions or privileges of employment."  NYCHRL § 8-107(1)(a).  The New York Court of Appeals explained in *Bloomberg* that, for purposes of the NYCHRL, employees "may incur liability only for their own discriminatory conduct, for aiding and abetting such conduct by others, or for retaliation against protected conduct."  167 N.E.3d at 460.[6]

"Courts must analyze NYCHRL claims separately from any federal law claims and should construe the NYCHRL 'liberally for the accomplishment of the uniquely broad and remedial purposes thereof.'"  *Bueno v. Eurostars Hotel Co., S.L.*, No. 21 Civ. 535 (JGK), 2022 WL 95026, at *8 (S.D.N.Y. Jan. 10, 2022) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013)).  In particular, the standard for a discriminatory act under the NYCHRL is more lenient.  A plaintiff need only show that she was "treated [] less well, at least in part for a discriminatory reason.'"  *Khwaja*, 2021 WL 3911290, at *3 (quoting *Mihalik*, 715 F.3d at 110 n.8).

---

[6] No aiding or abetting theory has been pleaded in this case.

The severity and pervasiveness of conduct is "relevant only to the issue of damages" and "the challenged conduct need not even be 'tangible (like hiring or firing).'" *Mihalik*, 715 F.3d at 110 (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 38, 40 (App. Div. 2009)). It is sufficient to show "differential treatment of any degree based on a discriminatory motive." *Gokhovsky v. N.Y.C. Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014). Additionally, while truly trivial conduct may not be actionable under the NYCHRL, the "employer has the burden of proving the conduct's triviality under the NYCHRL" as an affirmative defense. *Mihalik*, 715 F.3d at 111.

### i.  Womack

Under the lower standards of the NYCHRL, Matthew has adequately alleged that Womack treated her differently by responding to her and other black administrators "in a belittling tone," dismissing their concerns about equal treatment and equal pay at two different administrators trainings, and inviting them to find another job if they were not satisfied with their pay or the workplace conditions. Compl. ¶¶ 32, 34. Matthew cites these incidents as examples of times when black employees were "responded to in a rude, demeaning and dismissive manner, while White and non-Black employees' concerns and questions are properly attended to." *Id.* ¶ 31. While a close case, Matthew's allegations that black administrators, including herself, were thus treated differently than white and other non-black employees is sufficient to plead that Womack's undertook his conduct at least in part for a discriminatory reason. Defendants' motion to dismiss with respect to the NYCHRL claim against Womack is therefore denied.[7]

---

[7] The Court notes that all allegations against Womack occurred outside three year-statute of limitations period that applies to claims under the NYCHRL (as well as under the NYSHRL and section 1983). *See Isbell v. City of New York*, 316 F. Supp. 3d 571, 585 (S.D.N.Y. 2018). Womack's final alleged action took place in March 2018, *see* Compl. ¶ 34, and the Complaint was not filed until June 16, 2021. But Defendants have not raised any statute of limitations defense as to Womack, so the Court considers it waived as well.

### ii.     Beimer and Pinchinat

As discussed, Matthew alleges that all black employees at TCPA's New York office were reprimanded or received some form of disciplinary action from Beimer after she became Regional Manager, and from Pinchinat after she became Manager, while white employees were "not treated in a similar adverse manner." *Id.* ¶ 36.  And Pinchinat allegedly gave Matthew a poor performance evaluation on August 31, 2019 and placed her on a three-month probation "based on unfounded allegations." *Id.* ¶ 39.  While these allegations were insufficient for the purposes of pleading race discrimination under the NYSHRL, they are sufficient to plead that Beimer and Pinchinat treated Matthew less well at least in part for a discriminatory reason for purposes of the NYCHRL. Defendants' motion to dismiss Matthew's NYCHRL race discrimination claim against Beimer and Pinchinat is therefore denied.

### C.     Hostile Work Environment Claims

Matthew brings hostile work environment claims under Title VII against TCPA (Ninth Cause of Action), under the NYSHRL against all Defendants (Tenth Cause of Action), and under the NYCHRL against all Defendants (Eleventh Cause of Action).  Defendants' primary argument for dismissal is that Matthew has failed to make allegations that rise to the level of an actionable hostile work environment under any of these statutes.  Defts. Mem. at 9-10.

### 1.     Title VII

Matthew's Ninth Cause of Action alleges promotion of a hostile work environment in violation of Title VII against TCPA.  Compl. ¶¶ 87-90.  Title VII prohibits "requiring people to work in a discriminatorily hostile or abusive environment." *Davis-Garett*, 921 F.3d at 42.

> To state a race-based claim for a hostile work environment, the plaintiff "must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff

subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's" race.

*Everett v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 7043 (JPC), 2022 WL 2342693, at *7 (S.D.N.Y. June 29, 2022) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)).

"A hostile work environment is created '[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Moore v. DeJoy*, No. 18 Civ. 9967 (JPC), 2021 WL 4523503, at *5 (S.D.N.Y. Sept. 30, 2021) (alteration in original) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)). To determine whether an environment is "hostile" or "abusive," a court considers "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. The hostile work environment may result from "a single incident [that] was extraordinarily severe, or . . . a series of incidents [that] were sufficiently continuous and concerted to have altered the conditions of [the plaintiff's] working environment." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (citation and internal quotation marks omitted). But "[i]solated incidents or 'episodic' stray remarks are not 'sufficiently continuous and concerted in order to be deemed pervasive.'" *De Figueroa v. New York*, 403 F. Supp. 3d 133, 160-61 (E.D.N.Y. 2019) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).

Taking into consideration all of Matthew's allegations, she adequately alleges a hostile work environment claim against TCPA under Title VII. Matthew alleges that black employees were "spoken down to," Compl. ¶ 30, that they were "spoken to in a belittling and insulting tone and manner," *id.* ¶ 30, that they were "responded to in a rude, demeaning and dismissive manner," *id.* ¶ 31, that they were paid differently than white employees, *id.* ¶ 33, that they were reprimanded

and subject to disciplinary action at a higher rate than white employees, *id.* ¶ 36, and that this conduct occurred "on a daily basis," *id.* ¶ 37.   A reasonable person would find this cumulative environment hostile or abusive, as further evidenced by multiple alleged instances of complaints presented by black employees at TCPA.  *Id.* ¶¶ 31, 32, 34, 42.   Matthew also has sufficiently pleaded that she subjectively believed the environment was hostile as indicated by her own complaints. *Id.* ¶¶ 38, 40, 43, 47.   And finally, the alleged conduct, all directed at black employees, created such an environment on the basis of Matthew's race.

While at least some of these allegations concern conduct outside of the 300-day window of the EEOC complaint, "[a] charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Davis-Garett*, 921 F.3d at 42 (alterations in original) (quoting *Morgan*, 526 U.S. at 113-14); *see also Morgan*, 526 U.S. at 105 ("[C]onsideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period.").   As Matthew alleges that acts making up the hostile work environment continued "on a daily basis" throughout her employment, which ended on July 14, 2020, Compl. ¶ 49, at least some of the relevant acts allegedly occurred within the statutory period and so all may be considered in assessing the hostile work environment claim.

Defendants' motion to dismiss the Title VII hostile work environment claim against TCPA is therefore denied.

### 2.      New York State Human Rights Law

Matthew's Tenth Cause of Action alleges promotion of a hostile work environment against all Defendants in violation of NYSHRL section 296(1)(h).  Compl. ¶¶ 91-94.  In support of this claim, Matthew alleges conduct committed by Pinchinat that partially occurred in late August 2019.  Given a change in New York law around that time, discussed below, identification of the appropriate legal standards that apply to Matthew's Tenth Cause of Action requires some explanation.

### i.      Applicable Law and the 2019 Amendment

The NYSHRL was amended in 2019, and two changes are relevant to Matthew's state hostile work environment claim.  The first is language added to New York Executive Law section 300 directing that the NYSHRL be construed "liberally for the accomplishment of the remedial purposes thereof, *regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed*."  N.Y. Exec. Law § 300 (emphasis added).  The amendment was signed into law on August 12, 2019, and this liberal construction language applies to causes of action accruing on or after that date.  S. 6577, 242d Leg., 2019 Sess. §§ 6, 16 (N.Y. 2019); S. 6594, 242d Leg., 2019 Sess. § 4(d) (N.Y. 2019); *see Europe v. Equinox Holdings*, *Inc.*, No. 20 Civ. 7787 (JGK), 2022 WL 4124763, at *7 n.10 (S.D.N.Y. Sept. 9, 2022),

The same amendment also specifically altered the standards for hostile work environment claims under the NYSHRL.  Previously, such a claim would have been brought under section 296(1)(a) of that statute.  *See, e.g.*, *Mejia v. T.N. 888 Eighth Ave. LLC*, 95 N.Y.S.3d 168, 170 (App. Div. 2019).  The 2019 amendment added a new provision, codified at section 296(1)(h), which makes it

> an unlawful discriminatory practice . . . [f]or an employer, . . . to subject any individual to harassment because of an individuals age, race . . . [or] national origin . . . regardless of whether such harassment would be considered severe or pervasive . . . . [S]uch harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories.

NYSHRL § 296(1)(h).   This has the effect of eliminating any requirement that "harassing or discriminatory conduct be 'severe or pervasive' for it to be actionable and [adopted] instead a more protective standard that prohibits conduct that results in 'inferior terms, conditions or privileges of employment.'"   *Maiurano v. Cantor Fitzgerald Secs.*, No. 19 Civ. 10042 (KPF), 2021 WL 76410, at *3 n.2 (S.D.N.Y. Jan. 8, 2021) (quoting NYSHRL § 296(1)(h)).   This provision, however, was effective "on the sixtieth day" after the amendment was signed into law, meaning that section 296(1)(h) only took effect on October 11, 2019.   S. 6577, 242d Leg., 2019 Sess. §§ 2, 16(b) (N.Y. 2019).

As a result, for any NYSHRL hostile work environment claims accruing prior to August 12, 2019, neither change in state law applies, while both apply to such causes of action accruing on or after October 11, 2019.   *See Europe*, 2022 WL 4124763, at *7 n.10 (noting that "courts agree that the amendments do not apply retroactively").   But it creates a complication for causes of action accruing between those two dates.   If a cause of action accrued between August 12, 2019 and October 11, 2019, only the first change applies, *i.e.*, that the NYSHRL be construed "liberally for the accomplishment of [its] remedial purpose," regardless of the construction of any similar federal law.   N.Y. Exec. Law § 300.   Prior to the amendment, NYSHRL and Title VII hostile work environment claims were analyzed in the same manner.   *See Summa v. Hofstra Univ.*, 708 F.3d 115, 123-24 (2d Cir. 2013).   This meant that "[a] hostile work environment is created '[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently

severe or pervasive to alter the conditions of the victim's employment.'"  *Moore*, 2021 WL 4523503, at *5 (quoting *Harris*, 510 U.S. at 21).  The directive that, starting August 12, 2019, the NYSHRL be read liberally even when its language matches a federal statute presumably must do *something* to this standard, but the New York legislature is nearly silent as to exactly what the alteration entails.  The only guidance is that the excision of the "severe and pervasive" requirement would not take effect until sixty days later.

### ii.     Womack and Beimer

Because the alleged conduct of Womack and Beimer occurred prior to August 12, 2019, the Court analyzes Matthew's claim under the previous standard.[8]   The inquiry thus is whether Matthew has pleaded that these Defendants were responsible for a workplace "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment.'"  *Moore*, 2021 WL 4523503, at *5 (quoting *Harris*, 510 U.S. at 21).  Matthew's does not allege such sufficiently severe or pervasive conduct on the part of the Womack or Beimer due to her race.  As to Womack, Plaintiff alleges only rude and dismissive comments made at two events nearly a year apart.  Compl. ¶¶ 32, 34.  And Matthew's allegations of disciplinary actions taken by Beimer lack any content from which the Court can determine their severity.  *Id.* ¶ 36.  Therefore, Matthew's Tenth Cause of Action is dismissed as to Womack and Beimer.

---

[8] Matthew does not allege any actions taken by Beimer subsequent to August 12, 2019. She alleges that starting on or about April 1, 2019, after Beimer and Pinchinat assumed managerial roles at TCPA's New York office, all black employees received some form of disciplinary action or reprimand from them, but she does not allege that any employee, including her, was the recipient of such discipline or reprimand after August 12, 2019.  Compl. ¶ 36.  Although Matthew has failed to alleged conduct by these Defendants on or after August 12, 2019, Matthew's allegations would also fail under the new, lower, standard because their vagueness prevents the Court from assessing whether the alleged disciplinary action resulted in inferior terms, conditions, or privileges of employment.

### iii.    Pinchinat

Matthew's allegations regarding Pinchinat, however, require different analysis.  Matthew alleges that Pinchinat's conduct giving rise to a hostile work environment included not only discipline and reprimands starting in April 2019, but also Pinchinat's August 31, 2019 negative performance evaluation of Matthew and placement of Matthew on probation.  Thus, as alleged, Matthew's hostile work environment claim against Pinchinat accrued on August 31, 2019, and therefore fell within the August 12, 2019-October 11, 2019 window.  *See, e.g., Morgan*, 536 U.S. at 118 (discussing accrual of hostile work environment claims on date of each act).  That means that Matthew's state hostile work environment claim against Pinchinat must be evaluated mindful of the liberal construction directive that took effect on August 12, 2019.  Defendants, however, completely fail to address this issue, let alone analyze Matthew's state hostile work environment claims against Pinchinat under the appropriate standard.  S*ee* Defts. Mem. at 9-10.  And without Defendants adequately briefing this issue, Matthew has not been afforded an opportunity to respond and defend her claim under the proper standard.  The Court therefore declines to dismiss the NYSHRL hostile work environment claim against Pinchinat.

### 3.    New York City Human Rights Law

Matthew's Eleventh Cause of Action alleges the promotion of a hostile work environment in violation of the NYCHRL against all Defendants.  Compl. ¶¶ 95-99.  Because the standard for an NYCHRL claim for either discrimination or promotion of a hostile work environment is the same, *see, e.g.*, *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 337 (S.D.N.Y. 2021) ("[Plaintiff] brings claims under the NYCHRL for disparate compensation, denial of promotions, and what she frames as a hostile work environment.  For each of those claims she must show that she was treated 'less well' on the basis of her [protected characteristic] due to Defendant's discriminatory intent."),

Defendants' motion to dismiss this claim against the Individual Defendants is denied for reasons discussed *supra* in III.B.4.

**D.     Retaliation Claims Under the New York State Human Rights Law and the New York City Human Rights Law**

Matthew's Seventh and Eighth Causes of Action allege retaliation against all Defendants in violation of the NYSHRL and the NYCHRL, respectively.  Compl. ¶¶ 78-86.[9]

NYSHRL section 296(7) makes it unlawful "for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."  NYSHRL § 296(7).  "The same standards govern retaliation claims under Title VII and the [pre-amendment] NYSHRL." *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 66 (S.D.N.Y. 2020).  Section 704(a) of Title VII includes an anti-retaliation provision that makes it unlawful "for an employer to discriminate against any employee because that individual opposed any practice made unlawful by Title VII or made a charge, testified, assisted, or participated in a Title VII investigation or proceeding."  *Littlejohn*, 795 F.3d at 315 (internal quotation marks and alterations omitted).

To demonstrate a *prima facie* case of retaliation under either Title VII or the pre-amendment NYSHRL, "a plaintiff must establish: (1) that she participated in an activity protected by Title VII [or the NYSHRL], (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Harris*, 2021 WL 3855239, at *8 (internal quotation marks omitted).  "Protected activities under

---

[9] Defendants do not seek dismissal of Matthew's Title VII retaliation claim against TCPA as alleged in the Sixth Cause of Action.  *See* Defts. Mem. at 13.

Title VII [and the NYSHRL] include employee complaints about employer discrimination." *Moncrief v. N.Y. Pub. Libr.*, No. 05 Civ. 2164 (TPG), 2007 WL 2398808, at *5 (S.D.N.Y. Aug. 16, 2007) *aff'd*, 343 F. App'x 627 (2d Cir. 2009).  Furthermore, "[a] plaintiff must also ordinarily plead that the defendant had knowledge of the protected activity." *Cardwell v. Davis Polk & Wardwell LLP,* No. 19 Civ. 256 (GHW), 2021 WL 4434935, at *29 (S.D.N.Y. Sept. 23, 2021) (internal quotation marks omitted).  "A plaintiff may meet this pleading standard by pleading facts that permit the Court to 'reasonably infer that she engaged in protected activity known to the Defendants.'"  *Id.* (quoting *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 57 n.8 (S.D.N.Y. 2019)).

The adverse employment action threshold for a retaliation claim is lower than for a discrimination claim.  It requires only that the action be one that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006).  "Although 'petty slights or minor annoyances' are not actionable, the Supreme Court has emphasized that '[c]ontext matters.'"  *Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 124 (S.D.N.Y. 2020) (alteration in original) (quoting *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010)).  While the standard is "objective," *White*, 548 U.S. at 68, "something might be a 'petty slight' to one person but 'matter enormously' to another, such that it could 'deter a reasonable employee from complaining about discrimination,'" *Massaro v. Bd. of Educ.*, 774 F. App'x 18, 22 (2d Cir. 2019) (quoting *Vega*, 801 F.3d at 90).

The NYCHRL imposes an identical standard to that of the pre-amendment NYSHRL except "the plaintiff need not [allege] any 'adverse' employment action; instead, she must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Benzinger,* 447 F. Supp. 3d at 129 (alteration omitted).  As with the NYSHRL,

the causal connection can be shown temporally.  *Mooney v. City of New York*, No. 18 Civ. 328 (DLC), 2018 WL 4356733, at *9 (S.D.N.Y Sept. 12, 2018).  "To survive a motion to dismiss [a retaliation claim under the NYCHRL], a plaintiff need only allege that retaliatory animus played some role in the employer's decision."  *Cardwell,* 2021 WL 4434935, at *32.

Defendants contest the sufficiency of Matthew's allegations of retaliation with respect to the Individual Defendants.  Defts. Mem. at 12-13.  Defendants argue that Matthew has failed to allege that any of those Defendants "had any knowledge of her alleged protected activity, or themselves took any specific actions to retaliate against her."  *Id.*  Prior to analyzing Matthew's retaliation claims against the Individual Defendants, the Court notes that Matthew fails to sufficiently allege that any of those Defendants was responsible for her termination—which of course would constitute adverse employment action.  While she alleges that "Defendants terminated Plaintiff," Compl. ¶ 49, "lumping all the defendants together" with "no factual basis to distinguish their conduct" is insufficient to state a claim, *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001).

### 1.    Womack

Matthew fails to state a claim against Womack under the NYSHRL.  Even under the lower retaliation standard, Womack's hostile comments and tone at two administrative staff trainings did not constitute adverse employment actions.  A belittling tone and passive-aggressive comment would not be sufficient to dissuade a reasonable employee from making or supporting a claim of discrimination.

However, under the even broader standards of the NYCHRL, Matthew has stated a retaliation claim against Womack.  Matthew alleges that Womack responded in a "belittling tone" and invited employees to leave TCPA after he received complaints by black administrative

employees, including Matthew, about "workplace conditions and unequal pay." Compl. ¶ 34. These complaints about discrimination allegedly made by Matthew and others to Womack were conduct protected by the NYCHRL, and Womack's alleged response was at least reasonably likely to deter Plaintiff and others from complaining again (though not to deter a reasonable worker under an objective analysis), especially given that Womack suggested that the complaining employees should "leave and find another job." *Id.* Therefore, the Court dismisses the Seventh Cause of Action against Womack and denies Defendants' motion to dismiss with respect to the Eighth Cause of Action against Womack.

### 2. Beimer

Though Matthew alleges that all black employees at TCPA's New York office were reprimanded or received some form of disciplinary action from Beimer after he became Regional Manager while white employees were "not treated in a similar adverse manner," Compl. ¶ 36, this allegation without more is insufficient to state a claim for retaliation under either the NYSHRL or the NYCHRL. Matthew does not allege when Beimer reprimanded or disciplined Matthew. It is therefore impossible to tell the temporal relationship between these actions and any protected activity. It is likewise not possible to infer from the Complaint whether Beimer committed any act with the required knowledge of any protected activity by Matthew. Indeed, Matthew never alleges that Beimer knew of any of her complaints at any time. For these reasons, Matthew's claims against Beimer for retaliation under the NYSHRL and the NYCHRL are dismissed.

### 3. Pinchinat

Matthew makes the same allegations regarding Pinchinat as she does regarding Beimer, with the additional allegation that Pinchinat gave her with a poor performance evaluation on August 31, 2019 and placed her on a three-month probation "based on unfounded allegations." *Id.*

¶¶ 36, 39.  That evaluation occurred a little more than a month following a complaint by Matthew to H.R.  *Id.* ¶ 38.  This temporal proximity likely would be sufficient to allow an inference of retaliation providing Pinchinat had the requisite knowledge of Matthew's participation in protective activity.  *See, e.g.*, *Antonmarchi v. Consol. Edison Co.*, No. 03 Civ. 7735 (LTS) (KNF), 2008 WL 4444609, at *13 (S.D.N.Y. Sep. 29, 2008).  But Matthew has failed to allege that Pinchinat had any knowledge of her complaint when she conducted her performance evaluation of Matthew and placed Matthew on probation.  Without any such allegation, Matthew's retaliation claims against Pinchinat under the NYSHRL and the NYCHRL are dismissed.[10]

### E.      Leave to Amend

Lastly, the Court considers whether to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, a court "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Matthew has not asked the Court for leave to amend the Complaint.  "But even when a party does not ask for leave to amend, the Court may grant leave to amend *sua sponte*."  *In re Garrett Motion Inc. Sec. Litig.*, No. 20 Civ. 7992 (JPC), 2022 WL 976269, at *18 (S.D.N.Y. Mar. 31, 2022) (internal quotation marks omitted) (collecting cases).  When deciding whether to grant *sua sponte* leave to amend, "courts will consider many factors, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility."  *Morales v. Kimberly-Clark Corp.*, No. 18 Civ. 7401 (NSR), 2020 WL 2766050, at *9 (S.D.N.Y. May 27, 2020).  After considering these factors, the Court will grant Matthew leave to file an Amended Complaint, in the event she believes she can plead facts that

---

[10] Since Matthew's NYSHRL retaliation claim against Pinchinat fails because she has not alleged the requisite knowledge, the Court need not determine the exact standard for that claim by virtue of the NYSHRL's 2019 amendments for conduct accruing on or after October 11, 2019. *See supra* III.C.2.i.

would adequately state a claim upon which relief may be granted.  Additionally, because some of Matthew's claims survive, Defendants would not be unduly prejudiced by an amendment and are on notice as to the basic circumstances underlying Matthew's claims.  The Court emphasizes, however, that Matthew should amend only if she is able to resolve the pleading deficiencies outlined in this Opinion and Order.

## IV.  Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss in part and denies it in part.  The Court dismisses Matthew's Second, Third, Fourth, Seventh, Eighth (as to TCPA, Beimer, and Pinchinat), Tenth (as to TCPA, Womack, and Beimer), and Twelfth Causes of Action without prejudice.  And the Court denies Defendants' motion as to the First, Fifth, Eighth (as to Womack), Ninth, Tenth (as to Pinchinat), and Eleventh Causes of Action.  All claims against Womack, Beimer, and Pinchinat in their official capacities are dismissed without prejudice.

The Clerk of the Court is respectfully directed to close the motion pending at Docket Number 10.

SO ORDERED.

Dated: September 30, 2022
       New York, New York

_____
JOHN P. CRONAN
United States District Judge

30